# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

FRANCES S. THOMAS, )
)
Plaintiff, )
) No. 09 CV 02467
v. )
) Hon. Charles R. Norgle
SOUTH SHORE HOSPITAL CORP., )
)
Defendant. )

## OPINION AND ORDER

Plaintiff Frances Thomas ("Thomas") sues Defendant South Shore Hospital Corporation ("South Shore") under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq. Before the Court is South Shore's Motion for Summary Judgment. For the following reasons, the motion is granted.

## I. BACKGROUND[1]

Thomas began working as an x-ray technician for South Shore in September of 1987. On June 1, 2007, Thomas was terminated. At the time of her discharge, Thomas was sixty-three years old. Of the twelve remaining x-ray technicians, at least a third of them were in Thomas's protected class of employees over the age of forty. South Shore avers that in fact half were over the age of forty. Following Thomas's termination, South Shore appointed a thirty-seven year old part-time x-ray technician, Adam Yameogo ("Yameogo"), to fill Thomas's position as a full-time employee.

Thomas's immediate supervisor at the time, Timothy Williams ("Williams"), was in his "late 40's or early 50's." Def.'s Statement of Facts ¶ 6. Williams had a "zero

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts within the text.

tolerance policy" for rudeness, of which Thomas was well aware. Despite contrary assertions in her complaint, Thomas now admits that neither Williams, nor anyone else from South Shore, ever suggested that she retire or told her that she was too old to work.

For the duration of her employment, Thomas received occasional increases in her pay and passing performance reviews of "meets standards" the majority of the time. From 2006 to 2007, however, Thomas received three formal complaints against her which were noted in her personnel file. First, in April of 2006, a patient complained that when she informed Thomas about urine on the bathroom floor, Thomas replied, "Get on your knees and clean it up." Id. ¶ 10. While Thomas acknowledges that the complaint was made, she denies that the incident occurred. As a result of the complaint, a Corrective Disciplinary Action form, an Interdepartmental Problem Identification form, and a Patient Complaint Statement were all added to Thomas's personnel file. The Corrective Disciplinary Action form stated, "Next Incidence Termination 0 Tolerance." Id. ¶ 11.

Next, on May 16, 2007, a patient complained that Thomas treated her roughly by "slapp[ing] her on the arm harder than usual to find a vein" when deciding whether to start an IV. Id. ¶ 12. The female patient also complained that Thomas attempted to undress her for the exam without any privacy, and while two men were nearby. Id. at Ex. G. Two of the doctor's clerks, Lisa M. Faulkner and Brenda Reynolds, were present for the incident and corroborated the patient's complaint. Thomas admits that the complaint was made but again denies that the incident occurred. In her response to South Shore's statement of facts, Thomas also denies that the clerks corroborated the complaint; however, Thomas previously admitted to being aware of the corroboration in her

2

deposition, which South Shore cites and attaches as an exhibit. See id. ¶ 13, Ex. B. Following the incident, a Patient Complaint Statement, dated May 21, 2007, and a Problem Identification form, signed by Faulkner and Reynolds, were added to Thomas's personnel file. A younger hospital employee, Michael Jordan ("Jordan"), age thirty-eight, was also listed in the May 21, 2007 patient complaint. The patient claimed that Jordan gave her a solution to drink without identifying himself or explaining the purpose of the drink. Def.'s Resp. to Pl.'s Statement of Additional Facts ¶ 16. The complaint was also added to Jordan's personnel file. Jordan left his position at South Shore on July 27, 2007.

The final incident also occurred in May of 2007. Specifically, Dr. Wu, the Medical Director of Surgery, and his wife, Dr. Bledsoe, a Vascular Surgeon, both made complaints stating that Thomas was "very rude" during a phone call with Dr. Wu regarding the amount of time Thomas took administering dye to Dr. Bledsoe's patient. They also complained that Thomas failed to provide "speeded service" to Dr. Bledsoe's patient. Def.'s Statement of Facts Ex. B, at 60 & I. Thomas was aware that Dr. Wu reported her rude behavior.

Shortly thereafter, on May 28, 2007, Williams called Thomas and "told her that she was suspended pending termination." Id. ¶ 15. Three days later, on May 31, 2007, Williams called Thomas again to inform her that she was terminated "because of misconduct, complaints from Dr. Wu and Dr. Bledsoe in particular." Id. Subsequently, a Customer Complaint Statement, dated May 31, 2007, a Corrective Disciplinary Action form, dated June 1, 2007, and a Termination Notice, dated June 6, 2007, were added to Thomas's file.

Thomas initiated this action on April 22, 2009, and South Shore moved for summary judgment on September 2, 2011. The motion is fully briefed and before the Court.

## II.  DISCUSSION

### A. Standard of Decision

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Egan v. Freedom Bank, 659 F.3d 639, 642 (7th Cir. 2011). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Benuzzi v. Bd. of Educ. of City of Chi., 647 F.3d 652, 656 (7th Cir. 2011) (citing Groesch v. City of Springfield, Ill., 635 F.3d 1020, 1022 (7th Cir. 2011)). But before the nonmoving party "can benefit from a favorable view of evidence, [s]he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). The Court does not "judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact." Gonzalez v. City of Elgin, 578 F.3d 526, 529 (7th Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." Egonmwan v. Cook Cnty. Sheriff's Dep't, 602 F.3d 845, 849 (7th Cir. 2010) (internal quotation marks and citation omitted).

"Summary judgment is the 'put up or shut up' moment in a lawsuit." Siegel v. Shell Oil Co., 612 F.3d 932, 937 (7th Cir. 2010) (quoting Johnson v. Cambridge Indus., Inc., 325 F.3d 892, 901 (7th Cir. 2003)). Once a party has properly moved for summary judgment, "the nonmoving party may not simply rest upon the pleadings but must instead submit evidentiary materials that 'set forth specific facts showing that there is a genuine issue for trial.'" Id. (quoting Fed. R. Civ. P. 56(e)). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008). "To survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in her favor; if she is unable to 'establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial,' summary judgment must be granted." Benuzzi, 647 F.3d at 662 (quoting Celotex Corp., 477 U.S. at 322) (alterations in original).

## B. South Shore's Motion for Summary Judgment

Pursuant to the ADEA, "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "To establish a claim under the ADEA . . . the employee's protected trait must have actually played a role in [the employer's decision-making] process and had a determinative influence on the outcome." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007) (internal citations and quotation marks omitted) (alterations in original). Discrimination is proven by providing evidence through either the direct or indirect method. Atanus v. Perry, 520 F.3d 662, 669 (7th Cir.

5

2008). To survive summary judgment under either method, a plaintiff "must create at least an inference of illegal discrimination." Greene v. Potter, 557 F.3d 765, 769 (7th Cir. 2009) (internal citation and quotation marks omitted); see also Miller v. Borden, Inc., 168 F.3d 308, 312 (7th Cir. 1999) ("Under either method, summary judgment is improper if the plaintiff offers evidence from which an inference of discrimination may be drawn.").

Thomas does not allege direct evidence of age discrimination, but rather alleges it through the indirect method as set forth by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Under the indirect method, Thomas has the burden of establishing a prima facie case of discrimination. Atanus, 520 F.3d at 672. Once Thomas makes a prima facie case, the burden shifts to South Shore to "produce a legitimate, noninvidious reason for its actions." Id. If South Shore is able to provide such a reason, "the burden then shifts back to [the plaintiff] to show that the [defendant's] reasons 'are false and only a pretext for discrimination.'" Id. (quoting Bahl v. Royal Indem. Co., 115 F.3d 1283, 1290 (7th Cir. 1997)).

### *1. Thomas's Prima Facie Case of Age Discrimination*

In order to make a prima facie case of age discrimination in employment, "a plaintiff must demonstrate that (1) she is a member of a protected class, (2) she met her employer's legitimate job expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees outside of the protected class received more favorable treatment." Everroad v. Scott Truck Sys., Inc., 604 F.3d 471, 477 (7th Cir. 2010). The protected class consists of individuals over the age of forty. Martino v. MCI Communs. Servs., Inc., 574 F.3d 447, 452 (7th Cir. 2009). The parties agree that Thomas

is a member of the protected age group and that her termination was an adverse employment action. The parties disagree as to whether Thomas met legitimate job expectations and whether similarly situated employees under the age of forty received more favorable treatment.

### *a. Whether Thomas Performed According to South Shore's Legitimate Expectations*

"At the outset, this Court's inquiry into the issue of legitimate expectations is more aptly characterized as 'simply *bona fide* expectations, for it is no business of a court in a discrimination case to decide whether an employer demands 'too much' of his workers.'" Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1090 (7th Cir. 2000) (quoting Coco v. Elmwood Care, Inc., 128 F.3d 1177, 1179 (7th Cir. 1997) (emphasis added)). An employer's legitimate or reasonable expectations are those that are "objectively reasonable" and "adequately communicated to the employee." Tench v. Abbott Labs., No. 03 C 3648, 2006 WL 794765, at *4 (N.D. Ill. Mar. 23, 2006) (quoting Mills v. First Fed. Sav. & Loan Assoc. of Belvidere, 83 F.3d 833, 844, n. 7 (7th Cir. 1996)). South Shore maintains a "zero tolerance policy" for rude behavior. Neither party disputes that this behavioral policy is legitimate. See Fane v. Locke Reynolds, LLP, 480 F.3d 534, 541 (7th Cir. 2007) (finding that the employer-law firm's progressive discipline procedures not to tolerate, among other things, rude behavior and insubordination, were legitimate expectations). The question is whether Thomas met those expectations.

South Shore points to three complaints in violation of their behavioral policy that were noted in Thomas's personnel file. Thomas received a patient complaint in April of 2006 for telling a patient to get on her knees and clean up urine that the patient reported on the bathroom floor. The disciplinary forms from this incident reiterated South Shore

7

and Williams's "zero tolerance policy" and warned that any further incidents would result in termination. The complaints, however, continued. Thomas received a patient complaint in May of 2007 for allegedly slapping a patient's arm harder than necessary to produce a vein for an IV and trying to have the patient undress without privacy. Shortly thereafter, Thomas received a complaint from Dr. Wu and Dr. Bledsoe for her alleged rude behavior during a phone call with Dr. Wu, and her slow treatment of Dr. Bledsoe's patient. Thomas acknowledges that the complaints were made and documented by South Shore, but she nevertheless disputes that the incidents occurred. Because Thomas fails to present any evidence to support her blanketed contention that the three independent incidents did not occur, she fails to raise a genuine dispute of material fact on this issue to prevent summary judgment. See Siegel, 612 F.3d at 937 (stating that the nonmoving party must "submit evidentiary materials" to establish a genuine issue for trial).

In support of her assertion that she met South Shore's legitimate job expectations, Thomas claims that she routinely received passing performance reviews throughout her years of employment. The inquiry, however, "focuses on an employee's performance at the time she was fired, not her performance in the past." Jankovich v. Exelon Corp., 73 F. App'x 881, 883-84 (7th Cir. 2003) (stating that "an unblemished work record for most of her career" is irrelevant if she was not meeting employer expectations at the time she was fired); see also Epstein v. Loyola Univ. Med. Ctr., No. 99-3690, 2000 WL 1277625, at *4 (7th Cir. Sept. 7, 2000) (unpublished table decision) ("[T]he fact that he scored well on some of his evaluations does not undermine the credibility of Loyola's conclusion that he failed to meet their legitimate expectations as a whole."). Even if Thomas's execution of her job duties as an x-ray technician met South Shore's standards for job performance,

8

Thomas presents no evidence to rebut South Shore's allegation that she failed to meet standards for employee conduct, specifically rudeness. See Fane, 480 F.3d at 540-41 (finding "[t]he fact that Fane completed her assignments ha[d] no bearing on whether she met Locke Reynold's expectations regarding employee conduct" in a case where the employee was terminated for "rude behavior, insubordination, and not recognizing her own inappropriate behavior"). Accordingly, Thomas fails to establish that she met South Shore's legitimate employment expectations at the time of her termination.

### b. Whether Similarly Situated Employees Outside of Thomas's Protected Class Received More Favorable Treatment

With regard to the fourth factor, Thomas argues that Jordan, a younger hospital employee, received more favorable treatment because he was not terminated as a result of the same May 21, 2007 patient complaint that led to Thomas's termination. Thomas contends that Jordan is similarly situated to her.

"[A]lthough the 'similarly situated' inquiry is a 'flexible, common-sense one,' the comparators must be similar enough that any differences in their treatment cannot be attributed to other variables." Silverman v. Bd. of Educ. of Chi., 637 F.3d 729, 742 (7th Cir. 2011) (quoting Henry v. Jones, 507 F.3d 558, 564 (7th Cir. 2009)) (additional citations omitted). "Factors relevant to this inquiry include whether the employees reported to the same supervisor, whether they were subject to the same standards and whether they had comparable education, experience and qualifications." Burks v. Wisc. Dep't of Transp., 464 F.3d 744, 751 (7th Cir. 2006). "There must be sufficient commonalities on the key variables between the plaintiff and the would-be comparator to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." Coleman v. Donahoe, 667

F.3d 835, 841 (7th Cir. 2012) (internal quotation marks and citation omitted). Summary judgment is proper "where it is clear that no reasonable jury could find that the similarly situated requirement has been satisfied." Eaton v. Ind. Dep't Corr., 657 F.3d 551, 558 (7th Cir. 2011).

Thomas provides only that Jordan was thirty-eight years old, a hospital employee, and that he was also mentioned in the May 21, 2007 patient complaint. This is not enough to show that Thomas and Jordan are comparators. Thomas offers no other facts allowing for a meaningful comparison with Jordan's qualifications or performance.

Moreover, the patient complaint in which both Jordan and Thomas were named accuses the two employees of very different behavior. As to Jordan, the patient complained only that he gave her a drink without telling her why or identifying himself. See Def.'s Statement of Facts Ex. G. In contrast, the patient lodged several grievances against Thomas including that Thomas slapped her arm harder than necessary and undressed her without sufficient privacy. See id. "Employees are not similarly situated when relatively minor complaints about one employee pale in comparison to numerous, more serious complaints about the other." Jankovich, 73 F. App'x at 884 (internal quotation marks and citation omitted); see also Everroad, 604 F.3d at 479 ("When a plaintiff claims to have been disciplined more harshly than other, similarly situated employees based on a prohibited reason, the plaintiff typically must demonstrate that the other employees 'engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them.'" (quoting Antonetti v. Abbott Labs., 563 F.3d 587, 592 (7th Cir. 2009)). Because the complaints against Jordan and Thomas are not equal in severity, and because Thomas

10

fails to provide more detailed information about Jordan, the Court finds that Jordan is not similarly situated to Thomas for purposes of establishing her prima facie case of age discrimination.

Thomas also argues that Yameogo, her thirty-seven year old replacement, qualifies as a comparator. South Shore admits that it hired Yameogo, who was a thirty-seven year old part-time employee, to fill the full-time position vacated by Thomas. However, Thomas presents no evidence that Yameogo has ever received complaints or had misconduct noted in his file. Indeed, Thomas fails to provide any additional information about Yameogo's education, experience, or qualifications that could be used to establish him as a comparator. On these facts, Yameogo is not "similarly situated" to Thomas. See Everroad, 604 F.3d at 478 ("[Plaintiff] is similarly situated only to other insubordinate employees."). Therefore, Thomas fails to establish the fourth required factor in her prima facie case.

### 2. *South Shore's Burden to Show Evidence of a Non-Discriminatory Reason*

Even if Thomas was able to establish a prima facie case of age discrimination, South Shore has met its burden of providing a non-discriminatory reason for her dismissal. "The defendant's burden of producing evidence of a legitimate, non-discriminatory reason 'is merely a burden of production . . . that is not difficult to satisfy.'" Mills, 83 F.3d at 845 (quoting Dale v. Chi. Tribune Co., 797 F.2d 458, 463 (7th Cir. 1986)). South Shore maintains that it terminated Thomas because of her documented complaints of misconduct and rudeness, for which it maintained a zero tolerance policy. Thomas acknowledges both the policy and her receipt of the complaints. See Fane, 480 F.3d at 537 (terminating employee based on, *inter alia*, client complaints for rude

behavior). Accordingly, South Shore meets its burden, and it therefore becomes Thomas's burden to establish that South Shore's stated reasons are merely a pretext for age discrimination.

### 3. Thomas's Burden to Show Whether South Shore's Reasons are Pretextual

Just as Thomas is unable to show that she met South Shore's legitimate job expectations at the time of her termination, Thomas likewise fails to present sufficient evidence that South Shore's non-discriminatory reasons for her termination are merely pretextual. See Everroad, 604 F.3d at 477 (stating that the issue of performance expectations and the question of pretext often overlap). In response to South Shore's assertions of her documented misconduct, Thomas admits to receiving the complaints, but argues that the three independent incidents, involving both patients and doctors, did not occur. However, she presents no evidence in support of that contention. Moreover, it is irrelevant whether the incidents actually occurred. "[T]he question in a discrimination case is not whether the employer's stated nondiscriminatory ground for the action of which the plaintiff is complaining is correct but whether it is the true ground of the employer's action . . . ." Forrester v. Rauland-Borg Corp., 453 F.3d 416, 417 (7th Cir. 2006). Thomas does not dispute that the complaints were added to her personnel file. Nor does Thomas dispute South Shore's "zero tolerance policy" regarding rude behavior. Furthermore, Thomas acknowledges that after the incident in 2006, the Corrective Disciplinary Action form warned her that the next incident would result in termination.

Once again, Thomas's evidence of satisfactory past performance reviews is also insufficient to rebut South Shore's reasons for termination because only her performance at the time of termination is relevant. Jankovich, 73 F. App'x at 883; see also Anderson

v. Stauffer Chem. Co., 965 F.2d 397, 403 (7th Cir. 1992) ("The fact that an employee does some things well does not mean that any reason given for [her] firing is a pretext for discrimination."). Based on the facts, to which there is no genuine dispute, the Court finds that South Shore's stated reason for Thomas's termination is not pretextual. Because Thomas fails to meet her burden of establishing age discrimination, South Shore is entitled to judgment as a matter of law.

### III. CONCLUSION

Viewing the facts in a light most favorable to Thomas, there is no genuine issue of material fact as to her claim. Thomas fails to present evidence sufficient to support her burden of establishing a prima facie case of age discrimination. In addition, while South Shore satisfies its burden of showing a non-discriminatory reason for her dismissal, Thomas fails to show that South Shore's reason is merely a pretext for discrimination. Therefore, South Shore is entitled to judgment as a matter of law. For the foregoing reasons, South Shore's motion for summary judgment is granted.

IT IS SO ORDERED.

ENTER:

*[signature: Charles R. Norgle]*

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: August 23, 2012